IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MATTHEW GLENN FULLEN, )
)
      Plaintiff, )
)
   vs. ) Civil Action No. 2:15-675
)
CAROLYN W. COLVIN, Acting )
Commissioner of Social Security, )
)
      Defendant. )
)

AMBROSE, Senior District Judge

**OPINION**
**and**
**ORDER OF COURT**

**SYNOPSIS**

Pending before the Court are Cross-Motions for Summary Judgment. [ECF Nos. 9 and 11]. Both parties have filed Briefs in Support of their Motions. [ECF Nos. 10 and 12]. Plaintiff also filed a Reply Brief. [ECF No. 13]. After careful consideration of the submissions of the parties, and based on my Opinion set forth below, Defendant's Motion [ECF No. 11] is granted and Plaintiff's Motion [ECF No. 9] is denied.

**I. BACKGROUND**

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). Plaintiff applied for SSI on or about April 6, 2012. [ECF No. 7-3, at 53; ECF No. 7-6, at 146-152]. In his application, he alleged that he was disabled due to hidradenitis suppurativa; pilonidal cyst; depression; social anxiety; body

1

irritations from clothing/skin lesions; and MRSA, and that he had been unable to work since September 29, 2011. Id. Administrative Law Judge ("ALJ") Karl Alexander held a hearing on September 5, 2013, at which Plaintiff was represented by counsel. [ECF No. 7-2, at 24-52]. Plaintiff appeared at the hearing and testified on his own behalf. Id. A vocational expert also was present at the hearing and testified. Id. at 46-51. In a decision dated November 26, 2013, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. Id. at 11-20. On March 23, 2015, the Appeals Council denied Plaintiff's request for review. Id. at 1-5. Having exhausted all of his administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. [ECF Nos. 9 and 11]. The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Determining whether substantial evidence exists is "not merely a quantitative exercise." Gilliland v. Heckler, 786 F.2d 178, 183 (3d Cir. 1986) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." Id. The Commissioner's findings of fact, if supported by substantial

evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 416.920. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. § 416.920. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the

3

Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record, may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

### B.     Listing 8.06- Hidradenitis Suppurativa

At step two of the analysis, the ALJ found that Plaintiff had severe impairments, including hidradenitis suppurativa; chronic pilonidal cyst/abscess, post-excision; intermittent skin infections; hypertension; questionable restrictive ventilatory defect/suspected chronic obstructive pulmonary disorder ("COPD"); morbid obesity; major depressive disorder, moderate; dysthymia; and recurrent adjustment disorder with mild depression, secondary to physical conditions. [ECF No. 7-2, at 13]. At step three of the analysis, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. In so finding, the ALJ stated that he had "appropriately evaluated medical and other evidence pertaining to [Plaintiff's] medically determinable impairments in conjunction with all relevant severity criteria contained within the 3.00 Respiratory System, 4.00 Cardiovascular System, 8.00 Skin Disorders, and 12.00 Mental Disorders (including 12.04 Affective Disorders, section B and C) series of listed impairments." Id. He further found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except with the following limitations: the claimant requires a sit/stand option without breaking task and is able to sit, stand and walk for at least 20 minutes each before having to change position; can perform postural movements occasionally, except cannot climb ladders, ropes or scaffolds; to the maximum extent possible, should do all walking on level and even surfaces; should not do any outdoor work; should have no concentrated exposure to

4

temperature extremes, wet or humid conditions, environmental pollutants or hazards; should work in a low stress environment with no production line or assembly line type of pace, no independent decision-making responsibilities, and minimal changes in the daily work routine; is limited to unskilled work involving only routine and repetitive instructions and tasks; and should have no interaction with the general public and no more than occasional interaction with co-workers and supervisors.  Id. at 14-15.

Plaintiff argues that the ALJ erred as a matter of law in concluding that Plaintiff's chronic skin condition did not meet or equal Listing 8.06 – Hidradenitis Suppurativa.  Plaintiff contends that the medical evidence establishes that Plaintiff's impairments squarely meet Listing 8.06 and that the ALJ's "perfunctory discussion" of the Listing is insufficient, requiring reversal or remand. [ECF No. 10, at 11-13; ECF No. 13, at 2-4].

Listing 8.00 deals with Skin Disorders.  20 C.F.R. pt. 404, subpt. P, app.1 § 8.00.  Listing 8.06 falls under the "Category of Impairments, Skin Disorders," and provides as follows:

> **8.06 *Hidradenitis suppurativa***, with extensive skin lesions involving both axillae, both inguinal areas or the perineum that persist for at least 3 months despite continuing treatment as prescribed.

Id. § 8.06.  Listing 8.00 defines "extensive skin lesions" as lesions that:

> involve multiple body sites or critical body areas, and result in a very serious limitation. Examples of extensive skin lesions that result in a very serious limitation include but are not limited to:
>
> a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.
>
> b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.
>
> c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

Id. § 8.00. The Listing explains that the assessment of severity of a skin disorder is based generally on the extent of the skin lesions; the frequency of flare-ups of the lesions; how a claimant's symptoms (including pain) limit the claimant; the extent of treatment; and how the treatment affects the claimant. Id.

Plaintiff argues that the ALJ's failure to explain whether Plaintiff's skin disorder met Listing 8.06 during his step three analysis runs afoul of the Court of Appeals for the Third Circuit's decision in Burnett v. Commissioner of Social Security, 220 F.3d 112 (3d Cir. 2000), and, accordingly, requires reversal and/or remand. [ECF No. 10, at 14]. I disagree. Although the Burnett Court indeed held that an ALJ's bare conclusory statement that an impairment did not match, or was not equivalent to, a listed impairment was insufficient, 220 F.3d at 119-20, subsequent Court of Appeals decisions have clarified that the ALJ's failure to cite a specific Listing at step three is not fatal provided that the ALJ's review of the record permits meaningful review of the step-three conclusion. See Jones v. Barnhart, 364 F.3d 501, 503-05 (3d Cir. 2004); Lopez v. Comm'r of Soc. Sec., 270 F. App'x 119, 121-22 (3d Cir. 2008). As the Court of Appeals explained under similar circumstances in Jones:

> Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review. In this case, the ALJ's decision, *read as a whole*, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that Jones did not meet the requirements for any listing, including Listing 3.02(A).

364 F.3d at 504-05 (emphasis added) (citations omitted); see also Lopez, 270 F. App'x at 122 ("[A]lthough a discussion of the specific applicable Listings certainly would have been helpful, our primary concern always has been our ability to conduct meaningful judicial review.").

Here, although the ALJ did not expressly address Listing 8.06 in his step three analysis, he stated that Plaintiff did not have an impairment that met or medically equaled any of the

6

impairments listed in Appendix 1, Subpart P, Regulations No. 4, including specifically Listing 8.00 – Skin Disorders. [ECF No. 7-2, at 13]. In addition, the ALJ discussed the medical records and other record evidence regarding Plaintiff's hidradenitis suppurativa and related skin conditions later in his opinion. Among the records cited by the ALJ are the records from Plaintiff's treating physician, Dr. Duer, which indicate, inter alia, that as of March 13, 2013, Plaintiff was doing well on the medications Clindamycin and Rifampin. See ECF No. 7-13, Ex. 7F. The ALJ also cited treatment records from two visits to a dermatologist in August 2013 for treatment of hidradenitis [ECF No. 7-15, Ex. 12F]; and records regarding Plaintiff's pilonidal cyst which he had successfully excised on February 20, 2013. [ECF No. 7-7, Ex. 1F; ECF Nos. 7-10 to 7-13, Ex. 6F]. The ALJ appropriately found that Plaintiff's limited treatment history failed to support the degree of limitation he alleged. Id. at 15-16. The ALJ also relied on the report by consultative examiner Nabil Jabbour, M.D. who examined Plaintiff on June 28, 2012, and concluded that his hidradenitis suppurativa was only mild to moderate. [ECF No. 7-7, Ex. 5F]. Dr. Jabbour further noted that other than mild edema in both legs, Plaintiff's physical examination was normal. Id. In addition, the ALJ cited Plaintiff's self-described daily activities – such as performing personal care, preparing meals, doing housework and yardwork, going outside every day, driving and riding in a car, shopping, handling money, watching television, and using a computer – as evidence that Plaintiff was not limited to the extent claimed. [ECF No. 7-2, at 18].

Viewing the ALJ's opinion as a whole, the ALJ analyzed the probative evidence and explained his findings sufficiently to permit meaningful judicial review of the step-three analysis. Because substantial evidence supports the ALJ's step three conclusions, I find no violation of Burnett, and remand is not warranted on this issue.

Plaintiff's remaining arguments consist primarily of citation to medical records in an effort to demonstrate that Plaintiff's skin condition was serious enough to meet Listing 8.06. Although

7

these records show the presence of hidradenitis suppurativa in Plaintiff's axillae and inguinal areas, they do not support a finding that Plaintiff's skin lesions <u>very</u> <u>seriously</u> <u>limited</u> the use of his extremities and/or his ability to ambulate, or otherwise caused a very serious limitation as required to meet the Listing. In his Reply Brief, Plaintiff contends that Listing 8.00 does not require that his skin lesions very seriously limit his ability to ambulate, and, therefore, he can meet the Listing even without such a limitation. [ECF No. 13, at 2-4]. Although Plaintiff is correct that a very serious limitation on the ability to ambulate is only one example of a qualifying impairment, the regulation nevertheless requires that the skin lesions reach an equivalent level of severity to satisfy the Listing. The mere presence of persistent skin lesions does not meet that requirement. As set forth above, substantial evidence supports the ALJ's conclusions that, although limited, Plaintiff did not have an impairment of listing-level severity.

**C. Evaluation of Plaintiff's Mental Impairments**

Plaintiff asserts that the ALJ failed to properly evaluate his mental impairments in formulating Plaintiff's RFC. [ECF No. 10 at 14-16]. Specifically, Plaintiff argues that ALJ failed to assign appropriate weight to the opinion of his treating psychiatrist, Melissa Albert, M.D., that Plaintiff would "often" have concentration, persistence, or pace deficits, and that he experienced repeated episodes of decompensation. <u>Id.</u>; <u>see</u> ECF No. 7-15, Exs. 10F, 11F. This argument is without merit.

The amount of weight afforded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 416.927(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician "since these sources are likely to be the medical professionals most able to provide a detailed longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be

obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." Id. § 416.927(c)(2). If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," he must give that opinion controlling weight. Id. Also, "the more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." Id. § 416.927(c)(4).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir.2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir.1999)). However, "where ... the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. Id. Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Soc. Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or the wrong reason." Diaz v. Comm'r of Soc. Security, 577 F.3d 500, 505 (3d Cir. 2009).

As an initial matter, the ALJ here gave <u>significant</u> weight to much of Dr. Albert's opinion, including her findings of slight restrictions on activities of daily living and moderate difficulties in maintaining social functioning, and he accommodated for these portions of Dr. Albert's opinions in his RFC determination. [ECF No. 7-2, at 16]. The ALJ noted, however, that the record evidence did not support the portion of Dr. Albert's opinion stating that Plaintiff would <u>often</u> have concentration, persistence, or pace deficits or that he experienced repeated episodes of

9

decompensation. The ALJ supported his conclusions in this regard with substantial evidence. Examples of such evidence, as cited in the ALJ's opinion, include Plaintiff's GAF scores indicating only moderate symptoms (including a GAF score of 55 assessed by Dr. Albert); the opinion of consultative examiner Thomas E. Andrews, Ph.D. that found, inter alia, no unusual impairment to Plaintiff's concentration and that his pace and persistence were within normal limits; and Plaintiff's activities of daily living. [ECF No. 7-2, at 16-19, and exhibits cited therein]. With respect to episodes of decompensation, Plaintiff has not pointed to any record evidence (nor could I find any), in Dr. Albert's treatment notes or elsewhere, that he suffered any such episodes within the meaning of the regulations.

In short, I find the ALJ did not err in weighing Dr. Albert's opinion and other evidence of record in evaluating Plaintiff's mental health impairments. Substantial evidence supports the ALJ's conclusion that, although limited, Plaintiff was capable of performing some substantial gainful activity. Accordingly, I find no error in this regard requiring remand in this case.

### III. CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted, and Plaintiff's Motion for Summary Judgment is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MATTHEW GLENN FULLEN, )
)
    Plaintiff, )
)
vs. ) Civil Action No. 2:15-675
)
CAROLYN W. COLVIN, Acting )
Commissioner of Social Security, )
)
    Defendant. )
)

AMBROSE, Senior District Judge

**ORDER OF COURT**

AND NOW, this 24th day of October, 2016, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that Defendant's Motion for Summary Judgment [ECF No. 11] is GRANTED, and Plaintiff's Motion for Summary Judgment [ECF No. 9] is DENIED.

                                        BY THE COURT:

                                        /s/ Donetta W. Ambrose
                                        Donetta W. Ambrose
                                        U.S. Senior District Judge